UNITED STATES DISTRICT COURT
EASTERN DIVISION OF KENTUCKY
**SOUTHERN DIVISION AT PIKEVILLE**

| | | |
|---|---|---|
| WADE CONLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 7:13-CV-121-JMH |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of | ) | **MEMORANDUM OPINION & ORDER** |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

\* \* \*

This matter is before the Court upon cross-motions for summary judgment (DE 14, 15) on Plaintiff's appeal, pursuant to 42 U.S.C. § 405(g), of the Commissioner's denial of his application for disability insurance benefits. The Court, having reviewed the record and the parties' motions, will deny Plaintiff's motion and grant Defendant's motion.

**I.**

The Administrative Law Judge ("ALJ"), conducts a five-step analysis to determine disability:

1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

2. An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.

3. If an individual is not working and has a severe impairment which "meets the duration

requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.

4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.

5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 C.F.R. § 404.1520 (1982)). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id.* "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id.*

**II.**

Plaintiff was 41 years of age by his alleged disability onset date, September 29, 2009 (Tr. 243). Plaintiff has a high school education and worked in the past as a heavy equipment mechanic (Tr. 103, 282). Plaintiff stopped working in September 2009 following an accident at work (Tr. 105-06, 281). He alleged

2

he could no longer work due to numerous conditions, including residuals from the accident affecting his left leg, left knee, and left ankle, hearing problems, gout, depression, nerve damage, arthritis, bone spurs, and problems with his thyroid and stomach (Tr. 106-09, 281). The date Plaintiff is last insured for DIB is December 31, 2014 (Tr. 259).

Plaintiff protectively filed for a period of disability and disability insurance benefits ("DIB") on March 29, 2011, alleging he had become disabled on September 29, 2009 (Tr. 243-44, 259). After Plaintiff's application was denied initially and upon reconsideration (Tr. 157-60, 162-64), Plaintiff had a hearing before an administrative law judge ("ALJ") on August 3, 2012 (Tr. 98-125). The ALJ denied Plaintiff's claim on September 4, 2012 (Tr. 81-97), and the Appeals Council denied Plaintiff's request for review on October 10, 2013 (Tr. 1-5). Plaintiff filed a complaint in this Court on October 31, 2013. This case is now ripe for review under 42 U.S.C. § 405(g).

### III.

Plaintiff was injured at work on September 29, 2009, when his left leg was crushed while working under a piece of heavy equipment (Tr. 356, 379). He was treated for a non-displaced

3

fracture of the anterior/inferior and lateral talar body and mildly displaced fractures of the posterior medial talar body and distal fibula (Tr. 391). Dr. Matthew Nicholas then performed an open reduction internal fixation with excision fo the comminuted lateral process and reconstruction of the peroneal tendon sheath on Plaintiff's left ankle on October 8, 2009 (Tr. 359-65). Following the surgery, Plaintiff had pain and swelling in his ankle, and he reported numbness in his left foot (Tr. 379, 394). He engaged in "work hardening" to attempt to return to work but continued to have problems with his left ankle during that course of rehabilitation (Tr. 398, 1629).

A left ankle MRI performed on March 18, 2010, revealed marrow edema in the posterior medial aspect of the talus, extending inferiorly to the subtalar joint, signal changes in the peroneal tendons, and indications of partial tearing of the peroneal brevis tendon and moderate tibiotalar joint effusion (Tr. 964-65). Dr. Keith Myrick performed arthroscopy with cartilage and synovial debridement, repair of the peroneal brevis tendon tear, and nerve transportation of the left sural nerve on March 31, 2010. During physical therapy following surgery, Plaintiff continued to have heel area pressure with

burning along the fourth toe and numbness in the plantar surface of the foot and great toe (Tr. 445).

Eight months post-surgery, he reported trouble with his left ankle if he walked up a hill because his foot would tire to the point that he would not be able to come up on his toes (Tr. 483, 491). An EMG performed by Dr. Vasudeva Iyer on November 18, 2010, demonstrated neuropathy involving the left peroneal nerve and, to a lesser extent, the tibial nerve (Tr. 441). Plaintiff continued to have problems with balance and strength at the year anniversary of the second surgery and reported problems with his left ankle to Dr. Myrick (Tr. 453, 735-50).

Meanwhile, Plaintiff saw Dr. Kevin Pugh with complaints of left knee pain in July 2010 (Tr. 426). An MRI indicated tears through the posterior horn of both menisci (Tr. 426). Injection therapy was performed, and Dr. David Borden performed left knee arthroscopy on September 7, 2010 (Tr. 426, 434). He was diagnosed post-surgery with extensive grade 3 chondromalacia of the medial femoral condyle in the left knee, as well as grade 2 with some grade 3 chondromalacia of the left patella (Tr. 434). Dr. Borden found post-traumatic degenerative changes to the left knee with persistent lateral joint pain, continuing into late March 2011 (Tr. 815) during which time Plaintiff was still

having trouble with his left leg and ankle balance and strength, and suggested that Plaintiff attempt using a medial wedge into the left shoe.  On March 22, 2011, Dr. Borden released him from care, finding him at maximum medical improvement for purposes of his knee.  During the course of treating Plaintiff, Dr. Borden restricted Plaintiff in a range from no to limited work (Tr. 1355-63).

In addition to his issues with his left ankle and knee, Plaintiff had been treated by his general practitioner, Dr. Sonja Webb, for hypertension, hypothyroidism, and gout prior to the accident and continued with treatment for those conditions, as well as osteoarthritis/degenerative joint disease with knee pain and depression, after his injury.  (Tr. 835-37, 895-96, 1698, 1793).  He was treated for back pain and hand pain.  Dr. Webb ordered imaging studies, and x-rays on May 24, 2012, show osteoarthritis of the bilateral hands and wrists (Tr. 1717-1719).  After he complained of low back pain radiating to his bilateral legs, an x-ray of his low back was performed on October 17, 2011 (Tr. 1706) and followed by a lumbar MRI on November 8, 2011, with the impression of multilevel degenerative disc disease and joint disease, which was most severe at the L4-5 level, where he had a central extrusion type disc herniation

(Tr. 1707-08); a diffuse bulge at L4-5; and face degenerative joint disease and ligamentous thickening, producing bilateral neural foraminal narrowing at L4-5 (Tr. 1707-08). Plaintiff also has bilateral tinnitus and hearing loss, diagnosed in February 2004 at East Kentucky Eye, Ear, Nose & Throat and for which hearing aids were recommended, and has sought treatment for hearing loss as late as October 2011 (Tr. 890-92, 1739).

In a medical statement concerning Plaintiff's ability to perform certain activities prepared on June 19, 2012 (Tr. 1898-1903), Dr. Webb opined that Plaintiff could occasionally lift 20 pounds and lift 10 pounds frequently (Tr. 1900); stand or walk for a total of two hours and sit for about two hours total due to back and leg numbness; never climb or crawl and only occasionally balance, stoop, crouch or kneel; is precluded from heights, moving machinery, temperature extremes, and noise and vibration. She opined that he would be absent from his work for four or more days per month and would need unscheduled breaks every 30 minutes for five to ten minutes due to decreased range of motion and strength in the left ankle (Tr. 1901-02).

Plaintiff had a neurological examination by Dr. Sujata Gutti on June 29, 2012 (Tr. 1721) in which Dr. Gutti noted decreased sensation of the right anterolateral part of the

7

thigh, decreased sensation on the left lateral part of the thigh, left leg, and left lateral foot for life touch, temperature, and pinprick sensation, as well as a limp (Tr. 1723). He noted, as well, that Plaintiff exhibited tenderness over the mid to lower paraspinal muscles in the lumbar spine, that he had sacroiliac joint tenderness, more pronounced on the left side with bilateral positive Patrick sign and had reduced range of motion of the lumbar spine. Dr. Gutti diagnosed L4-5 and L5-S1 disc disease with degenerative changes and facet arthropathy, L4-5 disc extrusion and L5 radiculitis, left tibial and peroneal neuritis, status post left knee injury with meniscectomy and chondromalacia and persistent symptoms of the left knee with edema and joint effusion (Tr. 1724).

Dr. Gutti prepared a medical statement, opining that Plaintiff would be limited to standing and walking less than two hours total and sitting for about two hours and limited to lifting or carrying 20 pounds occasionally and less than 10 pounds frequently (Tr. 1727-28). He further opined that Plaintiff could never crawl and could occasionally climb, balance, stoop, crouch, or kneel and should avoid heights, moving machinery, and vibration (Tr. 1728). He felt that

Plaintiff would need breaks for 15 to 30 minutes hourly and would be absent more than four days a month (Tr. 1729).

During the course of the proceedings below, ALJ followed the five-step sequential evaluation process to determine whether Plaintiff was disabled (Tr. 86-91). See 20 C.F.R. §§ 404.1505, 404.1520 (2013); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). The ALJ found Plaintiff had severe impairments of status post left talus fracture secondary to crush injury; post-traumatic degenerative changes status post partial lateral and medial meniscectomies in left knee with persistent lateral joint line pain; and possible nerve injury to common peroneal and tibial nerves, probably in left popliteal fossa or left distal thigh (Tr. 86). The ALJ concluded that Plaintiff's hearing loss (with the assistance of a hearing aid), upset stomach, thyroid issue, gout, arthritis in the bilateral hands, degenerative disc disease with associated low back pain, and depression were not severe impairments (Tr. 86-87).

The ALJ then found that Plaintiff's impairments either individually or in combination did not meet or equal a listed impairment (Tr. 88). The ALJ determined that Plaintiff had the residual functional capacity ("RFC") for light work, such that

9

Plaintiff could lift/carry up to 20 pounds occasionally and ten pounds more frequently; stand/walk six hours out of eight;[1] sit six hours out of eight; is limited on pushing and pulling with the left lower extremity; and should avoid prolonged walking on uneven ground. He should avoid climbing rope, scaffolding and ladders but can occasionally climb ramps and stairs as well as occasionally balance, stoop, crouch, kneel and crawl; should avoid exposure to concentrated vibration and working around hazardous machinery and unprotected heights. He should avoid concentrated or loud noise because of his hearing aids. (Tr. 88-90). Based on Plaintiff's RFC, the ALJ found that Plaintiff could not perform his past relevant work (Tr. 90), but, with the assistance of a vocational expert ("VE"), the ALJ found that, given Plaintiff's age, education, work experience, and RFC, other work, such as a non-hazardous security guard, parking lot attendant, and ticket taker, existed in significant numbers that Plaintiff could perform (Tr. 90-91). Accordingly, the ALJ found Plaintiff was not disabled (Tr. 91).

**IV.**

---

[1] During the hearing, the hypothetical question posed to the VE was actually more restrictive, limiting Plaintiff to standing or walking for 4 out of 8 hours (Tr. 123).

Pursuant to 42 U.S.C. § 405(g), this Court reviews this administrative decision to determine "whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)) (internal quotation marks omitted). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009)) (internal quotation marks omitted). In other words, as long as an administrative decision is supported by "substantial evidence," this Court must affirm, regardless of whether there is evidence in the record to "support a different conclusion." *Lindsley*, 560 F.3d at 604-05 (citing *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)) (internal quotation marks omitted) ("administrative findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion"). A reviewing court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012).

11

**V.**

Plaintiff raises five challenges to the ALJ's decision, arguing that (1) the Commissioner failed to consider all of his impairments and to state an accurate Residual Functional Capacity (RFC) for Plaintiff; (2) the Commissioner failed to adequately consider if Conley's impairments met or equaled Listing 1.02A or 1.03; (3) the Commissioner failed to give adequately weight to the opinion of Plaintiff's treating physician, Dr. Sonja Webb; (4) the Commissioner substituted his own opinion for that of the physicians with respect to Plaintiff's medical conditions and limitations; and (5) that remand is warranted to consider new and material evidence pursuant to sentence six of 42 U.S.C. § 405(g).

**VI.**

With respect to Plaintiff's first argument, the Court concludes that the ALJ did not err in his consideration of Plaintiff's impairments nor did the ALJ fail to account for any severe limitations in his RFC finding. Plaintiff first asserts that "the ALJ did not discuss why or why not [his] hypothyroidism, degenerative disc disease and low back pain, hand osteoarthritis, or gout should be severe impairments."

12

Pl.'s Mem., at 10.   The ALJ, however, does not have the burden
to show Plaintiff impairments are not severe. Rather, Plaintiff
bears the burden of presenting evidence that shows that his
impairments cause significant work limitations, and are thus,
severe impairments. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d
525, 529 (6th Cir. 1997) (the claimant has the burden of proof
through step four of the sequential evaluation process); *see
also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 390-91 (6th Cir.
1999) (the claimant always bears the burden of proving his RFC).
That Plaintiff has hypothyroidism, degenerative disc disease
with low back pain, hand osteoarthritis, and gout does not,
alone, establish that those conditions cause any work
limitations. *See*, *e.g.*, *Young v. Sec'y of Health & Human Servs.*,
925 F.2d 146, 151 (6th Cir. 1990) ("This court has determined
that a claimant must do more to establish a disabling mental
impairment than merely show the presence of a dysthymic
disorder"); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)
("The mere diagnosis of arthritis, of course, says nothing about
the severity of the condition"). Accordingly, the ALJ's
discussion of the severity of Plaintiff's hypothyroidism and
gout was sufficient — the ALJ explained that the record evidence
failed to show that these impairments caused any work related

13

limitations (Tr. 87). Plaintiff must point to evidence to the contrary to successfully dispute this finding, but he has not done so.

Further, Plaintiff's assertion that the ALJ "did not address degenerative disc disease or hand osteoarthritis" Pl.'s Mem., at 8, is belied by the ALJ's decision (Tr. 87). Indeed, the ALJ gave a well-reasoned explanation for his conclusion that Plaintiff's degenerative disc disease with low back pain was a not severe impairment (Tr. 87). The ALJ explained that even though a lumbar MRI confirmed degenerative disc disease, there was minimal record of Plaintiff complaining of back pain to his physicians and that the record revealed that Plaintiff did not have aggressive treatment for back pain (Tr. 87). With respect to Plaintiff's hand osteoarthritis, the ALJ explained that "[d]espite allegations of arthritis in the bilateral hands..., May 24, 2012 x-rays of the bilateral hands and right wrist are unimpressive but for some minimal to mild findings and do not corroborate the alleged severity of these complaints" (Tr. 87). Plaintiff has not pointed to evidence which suggests otherwise.

Plaintiff also argues that the ALJ erred in considering his hearing loss because the ALJ relied on his observations at the hearing, as well as an agency employee's observations. Pl.'s

14

Mem., at 8. The ALJ, however, may rely on his own observations at the hearing and the observations of others in determining the severity of Plaintiff's impairments. *See Ward v. Comm'r, Soc. Sec.*, No. 95-2140, 1995 WL 712763, at *4 (6th Cir. 1995) (citing *Atterbury v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 571 (6th Cir. 1989) (holding ALJ appropriately relied upon his own observations at administrative hearing that plaintiff did not seem to have constant or frequent pain and that he appeared fit and could not possibly be as inactive as he claimed). Certainly, Plaintiff had to ask the ALJ to repeat himself at the hearing, Pl.'s Mem., at 10, but the record shows that he only had to do so a few times (Tr. 112, 116, 121), hardly establishing that he could not hear sufficiently to work. Moreover, as the ALJ noted, the fact that Plaintiff has had hearing loss since 2004 and has worked since that time.  Without more proof of some increasing limitation over time, it is reasonable to conclude that the condition would not significantly limit his work ability (Tr. 86).

Finally, although Plaintiff also asserts that the ALJ erred in not considering his hypothyroidism, hearing loss, degenerative joint disease, depression, and anxiety when determining his RFC, Plaintiff has failed to carry his burden to

15

demonstrate the limitations he has from these impairments. *See Her*, 203 F.3d at 390-91. Plaintiff cites evidence in the record of a long treatment history for degenerative disc disease and osteoarthritis, that he takes medication for his anxiety and depression, and that he has hearing loss and hypothyroidism, but he has pointed to no evidence of how these conditions limit his ability to work. The fact that Plaintiff has a condition for which he has received treatment does not establish that the condition causes significant limitations on his work ability. *See Young*, 925 F.2d at 151; *Higgs*, 880 F.2d at 863. Accordingly, Plaintiff has set forth evidence to support his argument that additional limitations were warranted as part of the ALJ's RFC finding or the ALJ's hypothetical question to the vocational expert.

## VII.

Plaintiff also challenges the ALJ's RFC finding and hypothetical question on the basis that a "discrepancy" exists between the RFC and the hypothetical question. The Commissioner presumes that the discrepancy of which Plaintiff complains is that the RFC limited Plaintiff to six hours and standing/walking and the hypothetical question posed to the VE limited Plaintiff to four hours (Tr. 88, 123), which would not be reversible

16

error, since the hypothetical question posed to the VE is more limiting and, thus, any jobs identified would necessarily fit within the broader range of work in the RFC identified in the written decision.

However, Plaintiff actually complains that the ALJ did not specify how long Plaintiff could sit, stand, or walk in that the given time period as required by SSR 96-9p, 1996 WL 374185 (July 2, 1996) (stating that RFC "must be specific as to the frequency of the individual's need to alternate sitting and standing."). The Commissioner explains and the Court agrees that SSR 96-9p is not applicable since it provides guidance only in circumstances where a claimant is limited to less than the full range of sedentary work, whereas Plaintiff is capable of light work (Tr. 88). Moreover, the language quoted by Plaintiff is only applicable when the claimant has the need to alternate sitting and standing. *See* SSR 96-9p, 1996 WL 374185, at *7 (S.S.A.). No such limitation was established here.

Plaintiff objects, as well, to the absence of any "limit" for pushing or pulling or for his exposure to excessive noise. (Tr. 123.) The Court is not persuaded that this is reversible error because the vocational expert was able to respond to the hypothetical question posed with jobs that would accommodate an

individual with some limitation in these areas (Tr. 123).
Plaintiff has not established that the jobs identified entail
more pushing and pulling with the lower extremities or noise
than what he can tolerate. Thus, Plaintiff has not shown that
remand is warranted for the ALJ to pose additional hypothetical
questions to the vocational expert, and the vocational expert's
testimony supports the ALJ's decision.

VIII.

Plaintiff argues that the ALJ summarily dismissed whether
his condition met or equaled Listing 1.02A and erred by not
explicitly addressing whether he met Listing 1.03. Pl.'s Mem.,
at 10.  The ALJ, however, considered Plaintiff's impairments and
found that they did not alone or in combination meet or equal a
listed impairment (Tr. 88). Although the ALJ only specifically
discussed Listing 1.02A, that was the only listing Plaintiff
alleged that he met (Tr. 100, 353).  Plaintiff's failure to
raise the issue of Listing 1.03 before the ALJ precludes him
from raising the issue now. *See Maloney v. Comm'r of Soc. Sec.*,
480 F. App'x 804, 810 (6th Cir. 2012); *Maple v. Apfel*, 14 F.
App'x 525, 537 (6th Cir. 2001).  Plaintiff has failed to
demonstrate with citations to the evidence of record that his
impairment meets or equals either Listing 1.02A or 1.03. Pl.'s

18

Mem., at 10. Remand is not warranted for the ALJ to further consider whether Plaintiff meets or equals these listings if evidence to satisfy the listings' criteria is absent. *See Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641-42 (6th Cir. 2013); *cf. Abbott v. Sullivan*, 905 F.2d 918, 923-25 (6th Cir. 1990) (finding the Commissioner failed to analyze Listing 12.05 where the evidence tended to show the claimant met the listing).

Plaintiff must show that his impairment meets or equals all of a listing's medical criteria to be found disabled based on that listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530, 531 (1990). For Listing 1.02A, regarding major dysfunction of a joint, Plaintiff must have an inability to ambulate effectively as defined in 1.00B2b in addition to meeting the diagnostic description of Listing 1.02. 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02A. Section 1.00B2b(1) of the listings defines an inability to ambulate effectively as "an extreme limitation of the ability to walk" generally such that the individual requires "a hand-held assistive device[] that limits the functioning of both upper extremities" to ambulate independently. Examples of ineffective ambulation include "the inability to walk without the use of a walker, two crutches or two canes," "the inability to walk a block at a reasonable pace on rough or uneven

19

surfaces," and "the inability to carry out routine ambulatory activities, such as shopping and banking." *Id.* at 1.00B2b(1). Listing 1.03 for reconstructive surgery or surgical arthrodesis of a major weight-bearing joint also requires an inability to ambulate effectively, as defined in 1.00B2b, to meet or equal the listing.

Plaintiff did not meet his burden to demonstrate that he cannot ambulate effectively, which is required to meet or equal both Listing 1.02A and 1.03. Pl.'s Mem., at 10. In fact, the record evidence shows otherwise. Plaintiff did not require a two hand-held assistive device for ambulation (Tr. 312, 321, 774). At one point after his injury, he indicated that he could not walk over one mile, which suggests that he could walk some distance up to a mile (Tr. 86, 1073). There is also evidence that he could use a garden tiller, indicating he could walk over rough and uneven surfaces (Tr. 86, 116), even though he has explained that he gave up hunting because he had difficulty traversing uneven ground.[2] He has also indicated that he could shop in stores one to two times a week (Tr. 309).

---

[2] Although Plaintiff asserts that there is no indication that he used a garden tiller for an extended period, his use did not have to be for an extended period to detract from his allegation that he met the listing. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2b(1) (indicating a claimant need only be able to walk a block on rough or uneven surfaces to be able to ambulate effectively).

20

Ultimately, it is Plaintiff's burden to prove that he meets the listing, and even if this Court ignores the fact that he used a garden tiller for the purposes of reaching a decision, the evidence of record still supports a conclusion that Plaintiff can ambulate effectively. Plaintiff's problems with strength and balance in his left ankle, without more, are not sufficient to show he meets or equals Listings 1.02A or 1.03, Pl.'s Mem., at 10, *see Zebley*, 493 U.S. at 530-31, and thus, Plaintiff has failed to demonstrate that remand is warranted for further consideration of these listings.

## IX.

Plaintiff argues that the ALJ erred when he failed to give controlling weight to Plaintiff's treating physician's opinions concerning his ability to do work and erroneously substituted his opinion about Plaintiff's conditions and limitations for the physicians' opinions. An ALJ is not bound by the opinion of a treating physician, *Combs*, 459 F.3d at 652, and such opinions are given controlling weight about a claimant's limitations only if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence," see 20 C.F.R. § 404.1527(c)(2). Additionally, if not entitled to controlling

21

weight, the opinion of a treating physician may also be given less weight based on a variety of factors including whether relevant evidence was presented to support the opinion and whether the opinion is consistent with the record as a whole. 20 C.F.R. § 404.1527(c)(3), (4).

Pursuant to the regulations, a claimant's RFC is an administrative finding as to the most a claimant can still do despite his limitations. 20 C.F.R. §§ 404.1527(d), 404.1545(a)(1). At the hearing level, the ALJ has the responsibility for determining a claimant's RFC. 20 C.F.R. § 404.1546(c). The RFC is based on the ALJ's review of all the relevant evidence in the record, not just medical opinions. 20 C.F.R. § 404.1545(a)(1), (3); SSR 96-5p, 1996 WL 374184, at *4 (S.S.A. 1996); *see also* 20 C.F.R. § 404.1520b ("After we review all of the evidence relevant to your claim, including medical opinions . . . we make findings about what the evidence shows."). Requiring an ALJ to base his RFC assessment on medical source opinion "would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." *See* SSR 96-5p, at *2; *accord Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013).

The ALJ declined to give Dr. Webb's opinions concerning his ability to do work controlling weight because he concluded that her opinion's inconsistent with other substantial evidence in the record, including Plaintiff's self-reported daily activities (Tr. 89). See 20 C.F.R. § 404.1527(c)(2). Dr. Webb opined on July 19, 2012, that Plaintiff had severe limitations: that he could stand and walk less than two hours in an eight-hour day, that he could sit only about two hours in an eight-hour day, and that pain would frequently if not constantly affect his ability to perform even simple tasks (Tr. 1898-1903). She wrote that he would need breaks as often as every thirty minutes during a workday due to the lack of range of motion in his ankle (Tr. 1903). Her opinions of Plaintiff's ability to do work notwithstanding, the evidence in the record shows that Plaintiff performed yard work, including gardening and mowing his small lawn with a riding mower; that he could perform some household chores, such as laundry; that he could go fishing (after driving to a local fishing hole); that he could change the oil on his car; that he visited relatives next door several times a week; and that he attended church twice a week (Tr. 89, 115-16, 303, 308, 310). It also shows that he had to give up hunting because he could not stand to walk on uneven ground (Tr. 114).

23

Plaintiff stated the he could lift up to 30 pounds, that he had no problems concentrating, and that his ability to pay attention was average (Tr. 89, 311).

The ALJ was obliged to consider Dr. Webb's opinion and these self-reported activities and estimates of ability against the background of other medical evidence,[3] the imaging studies of Plaintiff's spine and hands, the EMG documenting neuropathy, and Plaintiff's complaints of pain in his lower back, hand, left knee, and ankle. *See Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ not a physician ultimately determines a claimant's RFC. . . . An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding."). In other words, while there is evidence to support some degree of limitations, the Court cannot say that the ALJ erred in evaluating Dr. Webb's estimate of Plaintiff's ability to do work given the interplay between her estimation of limitations and what Plaintiff stated

---

[3] While it is more distant in time, following treatment for his knee injury, Plaintiff was released to work on March 22, 2011, by Dr. Borden (Tr. 1676). There is also evidence in the record that another physician, Dr. Nicholls, also believed that Plaintiff would eventually be able to return to work (Tr. 1629). There is no indication of what final restrictions were indicated as appropriate or whether a full or unlimited release to work was indicated.

24

he could accomplish and other medical evidence. See 20 C.F.R. §
404.1527(c)(2), (3).

## X.

Finally, the Court considers whether Plaintiff has met his
burden to show that remand under sentence six of 42 U.S.C. §
405(g) is warranted for review of evidence submitted to the
Appeals Council.  He suffered another injury to his left ankle
on the stairs in his home on January 28, 2013, after the ALJ's
decision was announced, which he contends is a further
aggravation of his 2009 work injury.

A sentence six remand for the taking of additional evidence
is warranted only if the evidence is new and material, and
Plaintiff demonstrates good cause for not previously submitting
the evidence. See 42 U.S.C. § 405(g); *Melkoyan v. Sullivan*, 501
U.S. 89, 98, 101-02 (1991); *Hollon ex rel. Hollon v. Comm'r of
Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006); *Foster v Halter*,
279 F.3d 348, 357 (6th Cir. 2001). New evidence is evidence that
was "not in existence or available to the claimant at the time
of the administrative proceeding." *Foster*, 279 F.3d at 357.
Evidence is material if there is a reasonable probability that
the ALJ would have reached a different decision if he had been
given the evidence. *Id*. A claimant can show good cause by

25

providing a "reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Id.*

While the evidence is new because it was not in existence at the time of the ALJ's decision, it is irrelevant to the ALJ's determination. The ALJ determined that Plaintiff was not disabled from September 29, 2009, through September 4, 2012 (Tr. 91), and the new evidence reflects Plaintiff's condition after that time period. The evidence is not probative of any fact before the ALJ, and the evidence is not material. *See Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986). No sentence six remand is warranted, and his request is denied.

**V.**

Ultimately, Plaintiff has not met the burden of proving that his conditions caused disabling limitations. *See* 42 U.S.C. §§ 423(d)(5)(A), 1382(a)(3)(H)(i); 20 C.F.R. §§ 404.1512(a), (c), 404.1529(a), 416.912(a), (c), 416.929(a); *Foster*, 279 F.3d at 353; *Bogle*, 998 F.2d at 347. The ALJ properly considered the relevant evidence and performed his duty as the trier of fact, resolving any conflicts in the evidence. *See Walters*, 127 F.3d at 528. Substantial evidence supports the ALJ's assessment of

26

Plaintiff's RFC and – in turn – his hypothetical question to the VE. Therefore, the VE's testimony provides substantial evidence to support the ALJ's finding that Plaintiff could perform other work. *See Foster*, 279 F.3d at 356-57; *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779-80 (6th Cir. 1987). Substantial evidence supports the ALJ's findings and his conclusion that Plaintiff was not disabled within the meaning of the Social Security Act. Further, no sentence six remand to permit new and material evidence is warranted on the facts before this Court.

Accordingly, **IT IS ORDERED:**

(1) that Plaintiff's Motion for Summary Judgment [DE 14] is **DENIED;** and

(2) that Defendant's Motion for Summary Judgment [DE 15] is **GRANTED.**

This the 2nd day of March, 2016.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge

27